## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHARLES BENNETT,

     Plaintiff,

v.

                                    CASE NO:

SPORTSMEDIA TECHNOLOGY
CORPORATION,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, Charles Bennett, by and through his undersigned counsel, and, by way of this Complaint, seeks relief against Defendant, SportsMEDIA Technology Corporation, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Florida Statute §§ 760.01 *et. seq.* (the "FCRA"), and 42 U.S.C. § 1981 ("Section 1981").   In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Charles Bennett ("Plaintiff" or "Mr. Bennett"), is an adult male citizen and resident of the City of Jacksonville, Florida. At all times relevant herein, Plaintiff worked for Defendant in Duval County, Florida.

2.      Defendant, SportsMEDIA Technology Corporation ("Defendant" or "SMT"), is a Delaware corporation, which has its headquarters in Durham, North Carolina and conducts business in the City of Jacksonville, Duval County, Florida. Defendant is, and has been, a covered employer within the meaning of Title VII and the FCRA.

3.      Plaintiff was a covered employee of Defendant within the meaning of Title VII and the FCRA at all times relevant herein.

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 2000e(5)(f)(3), and 42 U.S.C. § 1988(a).

5.      A substantial part of the acts complained of herein occurred in St. Johns County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

6.      Mr. Bennett's race is Black and he is African-American.

7.      On or about February 2015, Defendant hired Mr. Bennett to work as a Senior Level Software Developer in the IT department at SportsMEDIA Technology Corporation located in Jacksonville, Florida.

8.     At all times relevant herein, Mr. Bennett was the only African-American employee working in the IT department at SMT, which had a predominantly non-Black staff.

9.     At all times relevant herein, Mr. Bennett was experienced in the field, holding a Bachelor of Science degree in Computer Information Systems and twenty (20) years of experience in information technology. He was a seasoned professional in the software development field, having more than five years of experience working at a senior level.

10.     At all times relevant herein, Mr. Bennett worked in a professional and competent manner at SMT receiving good performance evaluations from Defendant.

11.     Despite performing successfully in his role as a Senior Software Developer, Defendant treated Mr. Bennett negatively in the terms and conditions of his employment in comparison to similarly situated, non-Black employees.

12.     Mr. Bennett's white colleagues subjected him to a hostile working environment through racial stereotyping and offensive comments during his time at SMT, which his supervisors knew of and failed to take action to remediate.

13.     During Mr. Bennett's employment with SMT, white colleagues suggested that Mr. Bennett was a thief because he had added an additional company computer monitor to his desk.   The monitor was extra company equipment left by a former employee, and Mr. Bennett had asked permission to use it.

14.     After Mr. Bennett added the monitor to his desk in order to assist with his work, his white colleagues repeatedly subjected him to offensive and racially stereotyping comments such as, "be careful, he will steal stuff off of your desk" and "better watch out for the monitor thief." These offensive comments made Mr. Bennett feel uncomfortable.

15.     Mr. Bennett's colleagues continued to make these comments concerning his extra monitor until he stopped using the company monitors and purchased two monitors using his own money. This harassment interfered with Mr. Bennett's work environment to the extent that he felt he needed to purchase his own equipment to prove he was not a thief and to end the offensive comments.   Mr. Bennett's supervisors did nothing to discipline or counsel the other employees regarding their offensive racial stereotyping of Mr. Bennett.

16.     Similarly situated, non-Black employees were not accused of theft in the workplace for using company equipment. For example, a white colleague of Mr. Bennett took an executive-level company chair without permission but did not face any questioning, comments, or offensive suggestions as Mr. Bennett had.

17.     SMT employees' behavior directed towards Plaintiff was discriminatory and harassing on account of his race. Defendant did not undertake action to correct the hostile work environment created by these comments, thereby ratifying and condoning the employees discriminatory conduct.

18.     SMT employees made racist comments regarding African-Americans in Mr. Bennett's presence and Defendant failed to take action to correct or discipline these employees for their behavior.

19.     While Defendant employed Mr. Bennett, he was present while a white, male colleague made disparaging comments during a staff meeting singling out African-American golf or tennis players, questioning their age and athletic abilities, and calling them offensive names. Supervisors failed to act when they heard this language.

20.     On a number of occasions, a white employee who was a member of Mr. Bennett's department would make disparaging comments about other African-American employees visiting the IT department. For example, this employee would make statements such as "does anyone even respect that guy," and "he only operates on CP time (colored people's time)." Despite the repeated use of these offensive, racist comments, supervisors never took action to counsel or discipline the white employee about such incidents.

21.     Mr. Bennett never directly or indirectly invited or solicited these kinds of offensive comments from his non-Black colleagues. Further, Mr. Bennett never gave any indication that he welcomed or supported these offensive comments.

22.     Defendant knew or reasonably should have known its employees were making offensive statements and racially stereotyping frequently in the workplace.

Supervisors were present on when employees made these statements and these supervisors failed to take remedial action to address these racially discriminatory, offensive comments that pervaded SMT's workplace.

23.    The hostile work environment created by SMT employees' offensive comments and racial stereotyping was severe, pervasive, humiliating, and unreasonably interfered with Mr. Bennett's work environment.

24.    In approximately March 2020, Defendant furloughed Mr. Bennett without pay and told him that his pay would be reduced by twenty-five percent (25%) upon his return to work. Plaintiff was one of two employees in his department furloughed, despite Mr. Bennett having more work experience on the current project being developed and maintained by SMT than similarly situated, non-Black employees.

25.    Additionally, Mr. Bennett learned that the other software developer furloughed by SMT, who was white, was brought back to work in approximately August 2020.   Mr. Bennett was not contacted about returning to work, but had more experience in the ongoing projects than the similarly situated, non-Black employee who returned to work.

26.    On or about October 29, 2020, Mr. Bennett was contacted to meet with his supervisor, a representative from SMT's Human Resources department, and the

company's Vice-President of Technology. During the meeting, Mr. Bennett was told that SMT had no work for Plaintiff to perform and that he was being terminated.

27.     Soon thereafter, Mr. Bennett learned that SMT had posted job opportunities for similar positions to the one he held. Nevertheless, Defendant advised Mr. Bennett that he should not apply for the positions even though he was qualified to apply.

28.     Defendant did not terminate any of the similarly situated, white employees who were members of Mr. Bennett's department. On information and belief, the white employees Defendant retained in the IT department had much less work experience and shorter tenures with SMT than Mr. Bennett.

29.     Prior to his furlough and termination, Defendant had not given Mr. Bennett any indication that his job was in jeopardy.

30.     On information and belief, Defendant terminated Mr. Bennett on account of his race.

## ADMINISTRATIVE PREREQUISITES

31.     Plaintiff timely dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") for discrimination (referred to herein as the "Charge"). The EEOC charge number assigned to Plaintiff's Charge was 510-2021-01084.

32.     On July 15, 2021, the EEOC issued and mailed a Notice of Right to Sue to Plaintiff.   Plaintiff has filed this Complaint within 90 days of his receipt of the Notice of Right to Sue.

33.     All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT I
### (Claims Against Defendant for Violation of 42 U.S.C. § 1981 – Race Discrimination)

34.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 33 above as though set forth fully herein.

35.     Plaintiff is African-American and was employed by Defendant during the time period relevant herein.

36.     During Plaintiff's employment, Defendant, by and through their owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his race, in violation of 42 U.S.C. § 1981, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying his opportunities for returning to employment in comparison to non-Black employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was subjected.

37.     In addition, Defendant terminated Plaintiff's employment because of his race, in violation of 42 U.S.C. § 1981.

38.     Plaintiff was injured and negatively affected because of this discriminatory work environment, and because of his discriminatory termination.

39.     The acts and omissions committed by Defendant and their owners, agents, officials and/or employees were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

40.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## COUNT II
### (Claim Against Defendant for Violation of Title VII (42 U.S.C. §§ 2000e *et seq.*) – Hostile Work Environment)

41.     Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 33 above as though set forth fully herein.

42.     During Plaintiff's employment, Defendant, by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his race, in violation of Title VII, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting

Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying him return to employment in comparison to non-Black employees; failing to provide support in Plaintiff's career development given to similarly situated, non-Black employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

43.     By and through these actions, Defendant created and permitted its owner, agents, officials and/or employees to create and maintain a hostile work environment on the basis of Plaintiff's race.

44.     Defendant knew or reasonably should have known of the hostile work environment and failed to take prompt remedial action to correct it.

45.     In addition, Defendant terminated Plaintiff's employment because of his race, in violation of Title VII.

46.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

47.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory damages against Defendant.

## COUNT III

### (Claim Against Defendant. for Violation of Title VII (42 U.S.C. §§ 2000e *et seq.*) – Discharge on the Basis of Race)

48.     Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 33 above as though set forth fully herein.

49.     During Plaintiff's employment, Defendant, by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his race, in violation of Title VII, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying him return to employment in comparison to non-Black employees; failing to provide support in Plaintiff's career development given to similarly-situated, non-Black employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

50.     Defendant terminated Plaintiff's employment because of his race, in violation of Title VII.

51.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

52.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and

entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory damages against Defendant.

## COUNT IV
### (Claim Against Defendant for Violation of Florida Civil Rights Act (Fla. Stat. § 760.01 *et seq.*) – Race Discrimination)

53.    Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 33 above as though set forth fully herein.

54.    During Plaintiff's employment, Defendant by and through its owner, agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his race, in violation of the FCRA, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's race, denying him opportunities for return to employment in comparison to non-Black employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

55.    In addition, Defendant terminated Plaintiff's employment because of his race, in violation of the FCRA.

56.    Plaintiff was injured and negatively affected because of this discriminatory work environment and because of his discriminatory termination.

57.    The acts and omissions committed by Defendant were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

58.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

**WHEREFORE**, Plaintiff, Charles Bennett, respectfully requests that this Honorable Court grant the following relief:

(a)    Enter judgment on behalf of Plaintiff and against Defendant on all counts;

(b)    Award Plaintiff back pay including lost benefits and front pay under Section 1981, Title VII, and the FCRA;

(c)    Award Plaintiff compensatory damages under Section 1981, Title VII, and the FCRA in an amount to be determined by the jury;

(d)    Order Defendant to reinstate Plaintiff and other declaratory relief;

(e)    Award Plaintiff punitive damages for Defendant's willful violations of Section 1981, Title VII, and the FCRA;

(f)     Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-

judgment interest, and post-judgment interest; and

(g)     Such other or further relief as the Court deems appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated: September 30, 2021                         Respectfully Submitted,

*/s/Neil L. Henrichsen*
Neil Henrichsen
Fla. Bar No. 0111503
HENRICHSEN LAW GROUP,
PLLC
301 W. Bay St., 14th Floor
Jacksonville, FL 32202
(904) 381-8183
(904) 212-2800 (Facsimile)
nhenrichsen@hslawyers.com
service@hslawyers.com